(No. 39996.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* EUGENE HERBERT BLANCHARD, Appellant.

*Opinion filed March 29, 1967.*

ROGER W. HAYES, of DeKalb, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM R. NASH, State's Attorney, of Rockford, (FRED G. LEACH, Assistant Attorney General, and WILLIAM H. SNIVELY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendant, Eugene Herbert Blanchard, found guilty of armed robbery by a jury in the circuit court of Winne-

bago County, was sentenced to the penitentiary for a term of two to ten years. He argues, *inter alia,* that a confession obtained from him was procured in violation of his constitutional right to the assistance of counsel. The defendant prior to trial filed a motion to suppress the confession, which after a hearing was denied by the trial court.

The defendant was arrested on Thursday afternoon, July 29, 1965, in Fort Madison, Iowa, as one of four men who had committed a robbery in Rockford, Illinois, on January 16, 1965. The defendant waived extradition to Illinois and on Friday morning, July 30, 1965, two Winnebago County deputies arrived in Fort Madison and the same day returned to Rockford with the defendant in their custody. Two different officers of the Winnebago County sheriff's office interrogated the defendant, and a short time later he confessed to the robbery.

The defendant's wife testified without contradiction at the hearing on the motion to suppress the confession that the defendant on the day of his arrest asked her to retain an attorney to represent him. She related that the Iowa authorities informed her the defendant would require the services of an Illinois attorney, and that she sought unsuccessfully by phone to communicate with an attorney in Illinois. The defendant testified that he had designated an Illinois attorney and asked his wife to phone him.

Edith Roeglin, the mother of the defendant, testified without contradiction at the hearing that she had a conversation on July 30, 1965, with the two Winnebago County deputies in the Fort Madison courthouse, and that the defendant and his wife were present. She stated that in the presence of the deputies the defendant had asked her to engage an attorney to represent him and that she had told her son that an attorney would be retained. She related that she told the older of the two deputies, as she identified him, that the family wished to engage an attorney to represent her son. She stated that the deputy said, "he does not need

an attorney, and if we need one they will appoint one for him over there." She said in reply, she testified, that they wished to retain their own attorney. The mother testified that she and the defendant's wife continued to attempt to communicate with a named Iowa attorney but were unable to do so until Monday, August 2, 1965, more than two days after the defendant had confessed to the robbery.

The circumstances which immediately preceded the interrogation of the defendant which led to his confession were in dispute. The interrogating officers testified that when they began to advise the defendant of his rights as an accused the defendant interrupted them and said that he knew his rights, that he had "served time," that he knew he could make a phone call and knew that he had a right to an attorney. The officers stated that the defendant at first denied the robbery and said that he had not requested to see an attorney. They testified the co-defendants below told the defendant that they had given a statement and that thereafter the defendant gave a statement, which, after reading it, he signed. The police stated that at the request of the defendant his co-defendants below had been brought before him. They related that a notice was posted in the interrogation room describing certain of the rights of a person under arrest.

The defendant testified that he had requested the permission of the questioning officers to phone an attorney and that he was told that he could phone after he gave a statement. The officers told him, he said, that the other robbers had confessed and implicated him and that they (the officers) wanted him to sign a confession. The defendant alleged that one of the officers struck him several times and told him that he would get three years if he signed a statement and 40 years if he did not. The defendant stated that he knew he had the right to an attorney and the right to phone for one. He declared he was never advised of his right to be silent and wasn't told that he did not have to

make any statement, though he stated that he had been told that any statement could be used against him. Further, on cross-examination the accused stated he did not see any posted notice of rights and that his co-defendants below were brought to him after he had signed the statement. The defendant admitted he signed the statement but denied that he had given it and said that one of the officers had prepared it.

The accused officer denied striking or coercing the defendant. On cross-examination one of the officers stated that the defendant had been advised of his right to be silent, his right not to give a statement and that any statement he might give could be used against him. However, the same officer on direct examination, when asked if he had advised the defendant relative to his rights, testified that he had "started" to advise Blanchard but was interrupted by the defendant. And the other officer stated four times in his testimony that the defendant "cut off" or "interrupted" the officers when they sought to advise him.

The Supreme Court in *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, at page 986, declared that incriminating statements given to police officers cannot be used against an accused at trial "where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and has been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, * * *." See also *People* v. *Hartgraves*, 31 Ill.2d 375.

The questions here are whether there was a denial of the defendant's request for counsel, together with a failure by the police to have effectively warned the defendant of his constitutional right to remain silent.

We deem that the circumstances of this case bring it within the authority of *Escobedo* and make the defendant's confession inadmissible. The claim that the defendant informed the officers prior to his confessing that he wished to confer with an attorney was disputed. However, the evidence given by the defendant's mother was clear and unchallenged. She testified that earlier, on the day he confessed, the defendant in the presence of two Winnebago county officers had asked her to engage an attorney to represent him, and that she told her son that an attorney would be retained. She had told the Winnebago deputies unequivocally that an attorney would be retained and she rejected their suggestion that an attorney was unnecessary and, if necessary, would be appointed by the court. She testified that the daughter and she persisted in their attempts to communicate with their attorney until he was retained, which was subsequent to the giving of the confession.

Neither of the two deputies testified at the hearing on the motion to suppress the confession nor at the trial.

The record does not disclose whether the deputies who escorted the defendant from Fort Madison to Rockford informed the officers who actually interrogated the defendant that he had requested an attorney earlier that day, and that the defendant's mother had told him an attorney would be retained and had emphatically advised the deputies that they wanted their own attorney. We find that, under the circumstances here, it is not important whether the interrogating officers had been informed of these facts by the escorting deputies, as we here must impute the notice that counsel had been requested to the interrogating officers. To hold otherwise could make it possible to nullify an accused's request for the assistance of counsel by the expedient of transferring his custody for questioning to an officer who would be unaware of the request for an attorney.

We judge that here there was a request for counsel which in legal effect was denied.

The trial in this case began on November 27, 1965. *Escobedo* v. *Illinois*, 378 U.S. 478, is applicable to trials commenced after June 22, 1964. *Johnson* v. *New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882.

While the State does not so argue explicitly, it appears to be its rationale that the defendant waived his right to counsel and the other rights of an accused under arrest. However, as this court observed in *People* v. *Bush*, 32 Ill.2d 484: "A finding of waiver is not lightly to be made." In a classical expression on waiver the Supreme Court in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 82 L. ed. 1461, 1466, stated: "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

Were it unmistakably clear that the defendant had intelligently withdrawn his original request for an attorney and having been effectively warned by the police of his right to be silent waived and abandoned such rights our holding would be otherwise. The record here, however, does not persuade that the defendant taken from his State of residence to this State, waived his right to counsel. Nor does it persuade that he was effectively warned of his right to be silent nor that he waived such warning.

In *United States* v. *Slaughter*, (4th cir.) 366 Fed. 2d 833, the Court of Appeals of the Fourth Circuit held that where the accused's expressed desire for counsel was followed by the taking by Federal agents of statements the defendant was wrongfully denied his right to counsel, and this despite the fact that the defendant had been somewhat

perfunctorily warned before he gave the statement that he had a right to remain silent.

We deem that the trial court ruled against the manifest weight of the evidence when it denied the defendant's motion to suppress the confession.

Other errors were assigned by the defendant on this appeal. They include the asserted inadequacy of instructions for the defendant and, particularly, the failure to give a cautionary instruction concerning the testimony of an accomplice. We assume that if there is merit to such contentions, the deficiencies complained of will not recur upon retrial and it is not necessary to consider them here, nor the State's argument that certain assigned errors were not properly preserved for review.

The judgment of conviction of the circuit court of Winnebago County is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*