(No. 41517.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
LLOYD LEE SHELTON, Appellant.

*Opinion filed May 28, 1969.*

JOHN K. FEIRICH, of Carbondale, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield,
(FRED G .LEACH, Assistant Attorney General, of counsel,)
for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant, Lloyd Lee Shelton, filed his post-conviction petition to review his conviction of the crime of arson. The petition was denied by the circuit court of Union County, after hearing evidence and finding that defendant was not denied constitutional rights at any stage of the proceedings, and defendant appealed to this court.

The issues on this appeal are whether defendant was deprived of constitutional rights on the grounds that the information charging him with arson failed to allege that his acts were committed "knowingly," and that he was not apprised of his right to counsel and to remain silent before certain interrogations held prior to arraignment, at which he pleaded guilty.

A plea of guilty does not preclude inquiry into any violation of constitutional rights. (*People* v. *Evans,* 37 Ill.2d 27, 32.) The record is undisputed that defendant was adequately and properly advised of all his constitutional rights at the time he entered the plea of guilty during arraignment.

With respect to any pre-arraignment interrogation of defendant, that evidence appears only in the post-conviction hearing, and is conflicting. The crime was allegedly committed on July 31, 1967, when a gasoline bomb exploded in the Florsheim Building in Anna, Illinois. The deputy fire marshal testified that he met defendant around August 1, 1967, the night of the fire; and that on August 4 he talked to defendant and five other boys who were around the area of the fire, and, when asked, they agreed to take a polygraph test in the future. At that time none of the boys was a suspect, and the marshal did not apprise them of any constitutional rights.

Defendant testified that on August 4 he was taken in a police car to the station and questioned by the fire marshal. Defendant denied he committed the arson, and when asked if he could prove that, defendant told of a conversation with

a policeman some 35 to 40 minutes before the fire. The policeman apparently corroborated the conversation, and defendant was told he could go home. On August 9, defendant was picked up by the police at his place of work, as the first of the boys to be given the polygraph test. He was neither subpoenaed nor arrested, and went with the police without objection when told he was wanted for questioning and that the "man was there with the machine." He was taken to the building where the polygraph operator had set up the machine. Defendant was alone with the polygraph operator, and after the machine was hooked up, but before taking the test, defendant admitted to the polygraph operator that he set the fire. The operator informed the fire marshal. The police chief and fire marshal advised defendant of his rights, presented him with a waiver to read and sign, and then took defendant's statement apparently confessing the crime. According to defendant, there was also some discussion of probation and parole. Defendant was turned over to the State's Attorney and was in jail until arraignment the following day, August 10. That statement of defendant was not introduced in evidence at any time.

From the foregoing facts it is evident that in this case, unlike the *Miranda* and *Escobedo* cases (*Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 692, 86 S. Ct. 1602; *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758), no confession or admission elicited during in-custody interrogation was introduced in evidence or used as the basis of defendant's conviction. Nor can the questioning by the fire marshal here be equated with the "custodial questioning" deemed to infringe constitutional rights in the *Miranda* case. There the court expounded at length on the techniques of prolonged overbearing custodial interrogation eliciting confessions and incriminating statements without apprising defendants of their constitutional rights. In fact, *Miranda* expressly excepted from its scope voluntary statements of any kind made by defendants. (384 U.S. at 478; *People* v.

*Hill,* 39 Ill.2d 125, 130) ; and *Escobedo* limited its application to statements given where the investigation was "no longer a general inquiry," but had "begun to focus on a particular suspect." *People* v. *Blanchard,* 37 Ill.2d 69, 72.

The investigation here certainly had not focused on defendant on August 4 when all the boys seen in the vicinity of the fire were questioned and they agreed to take polygraph tests. It was pursuant to such voluntary agreement that defendant was picked up on August 9 and told the man was ready with the machine. Moreover, when defendant blurted out his guilt to the polygraph operator, it was not in response to any interrogation, for the test had not even begun, was never given, and no police or fire officials were present. Not only was defendant warned of his constitutional rights before he made any incriminating statements to the fire marshal, but such alleged statements, as well as the statement to the polygraph operator, were in no way used as the basis for the conviction. Under such circumstances we fail to perceive any denial of defendant's constitutional rights within the purview of the rules promulgated in the *Miranda* and *Escobedo* cases.

Defendant also contends that his conviction was based upon a legally insufficient information, and therefore violated his constitutional right to be informed of the nature and cause of the accusation, as provided in the sixth amendment of the United States constitution. To meet the constitutional mandate an indictment (or information) must be sufficiently specific to apprise defendant with reasonable certainty of the offense with which he is charged, so as to enable him to prepare a defense and to plead a conviction resulting from such prosecution as a bar to any future criminal proceedings. (*People* v. *Ross,* 41 Ill.2d 445, 448; *People* v. *Patrick,* 38 Ill.2d 255; *People* v. *Griffin,* 36 Ill.2d 430, 432.) It is undisputed that the information here alleged that defendant committed the offense of arson on July 31, 1967, in that he made a gasoline bomb and set it aflame in

the Florsheim Buildings on East Davie Street, Anna, Illinois, and damaged the building without the consent of the owner, in violation of chap. 38, par. 20—1 of the Illinois Revised Statutes. The information contained no charge that defendant acted "knowingly."

The legislative definition of "arson" (Ill. Rev. Stat. 1965, ch. 38, par. 20—1), insofar as relevant here, provides:
"A person commits arson when:
    (a)  By means of fire or explosive he knowingly:
        (1)  Damages any building of another without his consent * * *
    (b)  By means of explosives, he knowingly damages any property of another without his consent * * *."

This statute repeatedly uses the word "knowingly," and intent has been deemed an essential element of the crime of arson and the burning of buildings. *People* v. *Alward,* 354 Ill. 357; *Mai* v. *People,* 224 Ill. 414; *People* v. *Pearson,* 74 Ill. App. 2d 400, 403, 405.

We are cognizant of cases holding that where "knowledge" or acting "knowingly" is an essential element of a crime, the omission of the word "knowingly" from the indictment renders it a nullity. (*People* v. *Edge,* 406 Ill. 490, 493; *People* v. *Harris,* 394 Ill. 325, 327; *People* v. *Barnes,* 314 Ill. 140.) Thus, in the *Edge* case, where the information charged that defendant did unlawfully have in his possession a policy ticket, and omitted the word "knowingly," the court explained that "knowingly" implies that the act was performed consciously, intelligently and with knowledge of the facts, and concluded (p. 494): "For the reason the information did not allege that defendant knowingly possessed policy tickets, either in the language of the statute or *in other appropriate words,* it failed to charge him with a criminal offense." (Emphasis added.)

Although the information here omits the word "knowingly," the acts it does allege could not have been performed

unless they were done "knowingly." You cannot make a gasoline bomb and set it aflame in a building, as specifically alleged, without acting knowingly and without knowledge that there would be damage. In contrast, in the *Edge* case the mere possession of the policy ticket could have been entirely without knowledge, and there would have been no crime in the absence of such knowledge. Similarly, in the *Harris* and *Barnes* cases, knowledge could not be implied from the conduct alleged. Therefore, those cases are clearly distinguishable.

We find more analogous *People* v. *Mills,* 40 Ill.2d 4, 10, where the indictment charging defendant with possession of a drug failed to allege "knowledge," and the court, in adjudicating the sufficiency of the indictment, held that the term "possession" used in the indictment had the technical meaning given it in the Act and implicitly meant "knowing possession." Consequently, the failure to expressly allege knowledge did not render that indictment legally insufficient.

It is our view that since "knowledge" and "acting knowingly" are implicit here, not from any statutory definition, as in the *Mills* case, but from the specific allegations of defendant's acts set forth in the information, it cannot be earnestly contended that the information failed to apprise defendant of the crime charged. Furthermore, the information concluded with the statement that the defendant's acts were "in violation of paragraph 20—1 of chapter 38 of the Illinois Revised Statutes." It was sufficiently clear to enable him to prepare a defense, and to plead a conviction there in bar of any subsequent prosecution for the same offense.

Since the information complied with the constitutional requisites, we find no violations of any of defendant's constitutional rights in the original proceedings; the judgment of the circuit court denying defendant's post-conviction petition was in accordance with law and is affirmed.

*Judgment affirmed.*